## CIRCUIT COURT OF CARROL COUNTY
## MARYLAND

**MARK KOEHLER**
4150 Nora Dr.
Finksburg, MD 21048

**ANNE KOEHLER**
4150 Nora Dr.
Finksburg, MD 21048

        Plaintiffs,

vs.

**WELLS FARGO BANK**
**REGISTERED AGENT:**
CSC-LAWYERS INCORPORATING
SERVICE COMPANY
7 ST. PAUL STREET, SUITE 1660
BALTIMORE, MD 21202

**PAT MCCORMICK**
11015 STRATFIELD CT
SUITE 101
MARRIOTTSVILLE, MD 21104

**MCCORMICK MORTGAGE SERVICES**
**REGISTERED AGENT:**
PATRICK J MCCORMICK JR
11015 STRATFIELD CT
MARRIOTTSVILLE, MD 21104

**DOES 1-50.**

        Defendants.

CASE NO.



COMPLAINT FOR DECLARATORY
RELIEF, QUIET TITLE, DAMAGES AND
OTHER EQUITABLE RELIEF ARISING
FROM AND/OR FOR:

1.   Violations of the Truth in Lending Act (TILA);
2.   Violations of Real Estate Settlement Procedures Act (RESPA);
3.   Constructive Fraud;
4.   Civil Fraud;
5.   Negligence;
6.   Negligent Misrepresentation;
7.   Civil Conspiracy;
8.   Aiding and Abetting;
9.   Declatory Judgment and Quiet Title;
10.  Injunctive Relief (including TRO).



**EXHIBIT**

tabbies®

1

COMES NOW Plaintiffs, MARK KOEHLER and ANNE KOEHLER (hereinafter "Plaintiffs"), and submit this complaint for Declaratory Relief, Damages and Other Equitable Relief, against Defendants WELLS FARGO BANK (hereinafter "WELLS FARGO"), PAT MCCORMICK (hereinafter "MCCORMICK"), MCCORMICK MORTGAGE SERVICES (hereinafter "MMS"), (hereinafter collectively as "Defendants") and DOES 1-50 to be named later at such time as they are identified and/or become known; and seeks a Declatory Judgment from this Court declaring that Defendants, and all of them, are not entities entitled to enforce the subject mortgage loans to Plaintiff, either as holders and/or as holders in due course; and, seeks relief for the Defendants' collective illegal actions hereinafter set forth in various causes of action and other malfeasance in originating and granting the residential mortgage loans to Plaintiff.

The Plaintiffs in this case bought a house in this jurisdiction of this Court on February 12, 2007, and went to the Defendants, or their representatives and agents, for a loan to consummate the purchase. This case involves Plaintiffs who have alleged that they are victims of predatory and so-called "subprime" lending practices of the Defendants, where predatory lending practices were accomplished by the use of bait-and-switch tactics and unscrupulous agents who had a duty of loyalty and fair dealing with them, but who engaged in acts which intentionally concealed material facts from Plaintiffs in an effort to profit from such activities. As will be seen from the Statement of Facts Common to All Counts, the Plaintiffs relied on the superior knowledge and expertise of Defendants for all their information about the terms of their loan, and its conditions.

Accordingly, Plaintiffs bring this action against Defendants for Violations of

the Truth in Lending Act (TILA), Violations of Real Estate Settlement Procedures Act (RESPA), Constructive Fraud, Civil Fraud, Negligence, Negligent Misrepresentation, Civil Conspiracy, Aiding and Abetting, Declatory Judgment and pursuant to Maryland Consumer Protection Act for acts constituting false statements, a failure to disclose, in connection with Defendants' participation in the origination, securitization, and foreclosure of Plaintiffs' residential mortgage loans. In addition, Plaintiffs hereby seek an order from this Court declaring that Defendants to do not possess superior title to Plaintiffs' real property and are not persons entitled to enforce, collect, or foreclose on the underlying negotiable instrument and/or security instrument at issue in this action. Accordingly, Plaintiffs respectfully alleges as follows:

## I.    PRELIMINARY STATEMENT

1.    Each year, predatory lending extracts billions of dollars from low-income communities, depriving homeowners of their hard- earned equity and vitiating the promise of financial security that is the cornerstone of homeownership. Predatory Lenders target the equity, and ultimately the homes, of vulnerable homeowners by extending unaffordable loans packed with overly excessive fees and interest rates.

2.    In recent years, predatory lenders have aggressively marketed an array of "exotic" or "non- traditional" loans to potential and vulnerable homeowners that in recent trends, have similar racial and socioeconomic backgrounds. Many of these loans carry deceptively low "teaser" rates and other

abusive terms, which obscure the true cost of the loan. By qualifying the borrower for these loans at the initial rate, despite the borrower's inability to make future payments, lenders are almost guaranteeing that the borrower will have no choice but to default on the loan. Predatory lenders fuel this process by rewarding mortgage brokers with an incentive structure that pays the broker more through the yield spread premium ("YSP") for steering consumers into loans with higher interest rates than they would normally qualify for and less favorable terms such as prepayment penalties, not normally found in more conservative mortgage loans.

3.      Ultimately, lenders are also rewarded through higher interest rates for creating loan products such as "Stated Income Loans"; loans where the borrower's income is not verified through traditional documentation of income, even where documentation is readily available.  Thus, it is not surprising that the proliferation of predatory loans in the subprime mortgage market is one of the primary causes of the current nationwide foreclosure epidemic.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to MD. CODE ANN., CTS. & MD. CODE ANN., CTS. & JUD. PROC. I §§ 1-501 and 4-402 (e)(1), and 3-401 through 3-415; in that, this is a civil action within the original jurisdiction of the Court and the amount in controversy is within its jurisdictional threshold.

5.      This court has personal jurisdiction over Defendants in this action

pursuant to MD. CODE ANN., CTS. & JUD. PROC. II §§ 6-102 through 6-103, because Defendants engage in regular business in the State of Maryland and/or have a resident agent within the State of Maryland.

6.   Venue is proper in the Circuit Court for Montgomery County pursuant to MD. CODE ANN., CTS. & JUD. PROC. II § 6-201 (a) and (b), in that, Defendants engage in regular business in Montgomery County, the cause of action arose in Montgomery County, and the real property at issue is located in Montgomery County.

7.   This Court has jurisdiction over this action pursuant to the Truth in Lending Act, 15 U.S.C.§ 1640(e) and 28 U.S.C. §§ 1331 and 1337.

8.   Jurisdiction of this court for the pendent claims is authorized by Fed. R. Civ. P. 18(a). Plaintiffs consents to the entry of a final order or judgment by this Court.

## III. PARTIES

9.   Plaintiffs, now and at all times relevant to this action, is and was owner of a residence in the city of Finksburg, Carroll County, in the State of Maryland.  The residence is commonly known as **4150 Nora Dr., Finksburg MD 21048** ("Subject Property").  Plaintiffs acquired the subject residence in February of 2007.  This is the home in which Plaintiffs have made a life and raised their child at all points of time following acquisition.

10.   Defendant, WELLS FARGO, is a national banking entity subject to supervision by the Comptroller of the Currency having a principal place of business located at 101 North Phillips Ave., Sioux Falls, SD 57104.

11.    Defendant, MCCORMICK MORTGAGE SERVICES, LLC ("MMS) is a limited liability company organized under the laws of the State of Maryland having a principal place of business located at 11015 Stratfield Ct., Marriotsville MD 21104; and, which has a resident agent known as PAT MCCORMICK located at 11015 Stratfield Ct., Marriotsville MD 21104.

12.    Defendant, PAT MCCORMICK ("MCCORMICK"), is an individual doing business as MCCORMICK MORTGAGE SERVICES, LLC and operating with a principal office located at 11015 Stratfield Ct., Marriotsville MD 21104.

## IV. SUMMARY OF FACTS

13.    This suit arises out of a loan transaction in which Plaintiffs, borrowed monies from WELLS FARGO (in which Defendants MMS and MCCORMICK acted as loan broker) towards a purchase of their primary residential real property located at 4150 Nora Dr., Finksburg MD 21048 (hereinafter "Subject Property"); and, which transaction was closed by MMS and MCCORMICK on February 12, 2007.

14.    Plaintiffs, MARK KOEHLER who possesses a high school education and at all times relevant herein, was employed as a SELF EMPLOYED CONTRACTOR. His wife ANNE KOEHLER was employed part-time.

15.    Plaintiffs with limited knowledge of the lending process and level of complexity in mortgage products were qualified by MMS MCCORMICK and WELLS FARGO to purchase a home, and for all intents and purposes, were unsophisticated consumers in the marketplace.

16. I    n early December of 2006, Plaintiffs sought to refinance their home. Defendant, **MCCORMICK MORTGAGE SERVICES, LLC ("MMS)** is a limited

liability company organized under the laws of the State of Maryland having a principal place of business located at 11015 Stratfield Ct., Marriotsville MD 21104; and, which has a resident agent known as PAT MCCORMICK located at 11015 Stratfield Ct., Marriotsville MD 21104.

1. Defendant, **PAT MCCORMICK ("MCCORMICK")**, is an individual doing business as **MCCORMICK MORTGAGE SERVICES, LLC** and operating with a principal office located at 11015 Stratfield Ct., Marriotsville MD 21104.

## IV. SUMMARY OF FACTS

2. This suit arises out of a loan transaction in which Plaintiffs, borrowed monies from WELLS FARGO (in which Defendants MMS and MCCORMICK acted as loan broker) towards a purchase of their primary residential real property located at **4150 Nora Dr., Finksburg MD 21048** (hereinafter "Subject Property"); and, which transaction was closed by MMS and MCCORMICK on February 12, 2007.

3. Plaintiffs, MARK KOEHLER who possesses a high school education and at all times relevant herein, was employed as a SELF EMPLOYED CONTRACTOR. His wife ANNE KOEHLER was not employed at the time.

4. Plaintiffs with limited knowledge of the lending process and level of complexity in mortgage products were qualified by MMS MCCORMICK and WELLS FARGO to purchase a home, and for all intents and purposes, were unsophisticated consumers in the marketplace.

5. In early December of 2006, Plaintiffs sought to refinance their home. In their search, they met Defendants MCCORMICK and MMS through a

recommendation of a family friend. In their visit, Plaintiffs were introduced to MMS and its agents. MCCORMICK acted as an exclusive agent for and on behalf of MMS.

6. On February 12, 2007, Plaintiffs and Defendants, and all of them, purported to execute a purchase offer for the purchase of the Subject Property and execution of the Mortgage and Note under loan number 0158244236.

7. Pursuant to representations made by MCCORMICK and MMS, and on the condition that Plaintiffs use a loan product called a Stated Income Stated Assets ("SISA"), Plaintiffs were underwritten and qualified for $417,000. *Exhibit A.*

8. A simple review of the Uniform Residential Loan Application ("URLA") implies that Plaintiff, MARK KOEHLER was a Self-Employed Contractor for twenty-one (21) years, earning approximately $16,250 per month. *Exhibit A*

9. The URLA was never signed by either Plaintiff, and was in fact enclosed in a letter from WELLS FARGO dated February 22. 2010. In this letter, WELLS FARGO states *"On February 9, 2007. The borrowers signed the enclosed copy of the Uniform Residential Loan Application attesting the information provided on the application was true and correct, the borrowers should not have signed it. Western States Mortgage Corporation, in good faith, relied upon their representation on the loan application to approve the financing of their loan"* [sic]. Evident from the documentation that WELLS FARGO has in their possession, the URLA was never signed by either Plaintiff, and therefore their recommendation is mute. *Exhibit B*.

10.   After investigation, Plaintiffs loan application was tampered with to reveal a misrepresented monthly income, which portrayed a non-sporadic annual

income of $195,000.

11.   Though Plaintiff MARK KOEHLER made $16,250 in one month as a Self-Employed contractor, it was rarely the norm. In fact, he stated this very information to MCCORMICK.

12.   To make the qualifying of the loan seamless and to receive a 2.017% broker commission fee of $8,410.89, evident on line 812 of the HUD-1, MCCORMICK and MMS reported that Plaintiffs made an annual income of $195,000. *Exhibit C.*

13.   At the inception of the loan, Plaintiffs Principal, Interest, Taxes Insurance ("PITI"), and other consumer debts totaled nine thousand-six hundred and seventy six dollars ($9,676.00) annually, equivalent to four hundred three dollars and seventeen cents ($403.17) per month. *Exhibit D.*

14.   Based on the income derived from the 2005 and 2006 tax return ($9,676.00) and the consumer debt totaling $4,987.00, Plaintiffs Debt to Income Ratio ("DTI") is 1,165%, which far exceeds the usual and customary underwriting guidelines for ALT-A and/or subprime lending. The lending underwriters not only have a responsibility and duty to follow WELLS FARGO'S underwriting guidelines, but to also insure that thorough analysis of the Plaintiffs income, liabilities and credit report is performed to determine the borrower's ability to repay the loan. Likewise, WELLS FARGO must execute due diligence in determining whether the origination of a loan was manifested in compliance with industry standards. *Exhibit D.*

15.   To make the purchase, Plaintiffs required a loan providing for 6.75% financing of the sales price of the Subject Property ($627,781.94).  Plaintiff's loan

requirements were met by way of a first loan brokered by MCCORMICK and MMS; originated by WELLS FARGO in the amount of $1,042,447.48 (hereinafter "loan"). ***Exhibit E.***

16.   At MCCORMICK and MMS's request, Plaintiffs provided income and asset information.   MCCORMICK and MMS represented to Plaintiffs that they could easily qualify and afford a loan as needed in order to consummate their purchase of the Subject Property.   Pursuant to said representations, and in reliance thereon, Plaintiffs submitted their loan application to MCCORMICK and MMS.

17.   MCCORMICK and MMS knew and/or, as loan broker, certainly should have known that the representations made to Plaintiff were false; that they were false when made; and, further, intended that such representations would be acted upon by Plaintiff in reliance thereon.

18.   For its role as loan broker, MCCORMICK and MMS received compensation of at least $8,410.89 in brokerage and other loan and application fees, evident by the HUD-1. ***Exhibit C.***

19.   At the request of MMS and MCCORMICK, Stoner Preston & Boswell, CHTD, acted as the escrow agent and received at least $175.00 for its role as closing agent. ***Exhibit C.*** Subsequent to the original purchase and loan transaction, WELLS FARGO acted as loan servicing agent for all other relevant periods of time. ***Exhibit B.***

20.   The purported mortgage and note were never consummated by signing therein.   Defendants, and all of them, never during the duration of the purported loan transaction, within reasonable amount of time, ever gave Plaintiffs

a signed copy of the purported mortgage and note.

21.    Plaintiffs never received a preliminary Good Faith Estimate, a Truth in Lending Disclosure, a Uniform Residential Loan Application and other federal and state disclosures that are required to be given within three (3) days of making the original loan application. Title 24 C.F.R. 3500.7 and Regulation Z, 12 C.F.R. 226.18, Regulation Z, 12 C.F.R. 226.19(a), 12 U.S.C. 2604, Financial Code §50000 et seq., and §50512.

22.    Defendant also intentionally failed and/or refused to provide Plaintiffs various disclosures, required by law, that would indicate to Defendant that the contract entered into was void and illegal. For example, Defendant failed to disclose the Affiliated Business Arrangement Disclosure, Servicing Disclosure Statement, Notice of Assignment, Sale or Transfer of Servicing Rights, Escrow Account Disclosure, Loan Program Disclosure, URLA, Opt-Out Notices, Notice of Adverse Action, and the Risk-Based Pricing Notice, which would have been found if preliminary disclosures were given.

23.    Plaintiff attended closing, conducted by Stoner Preston & Boswell, CHTD on February 12, 2007.

24.    Neither WELLS FARGO, MMS and/or MCCORMICK discovered nor corrected said erroneous and/or inconsistent loan documentation and/or took any steps to correct the same, and, in fact, prepared said loan documentation in an erroneous fashion, collectively in violation of their respective fiduciary obligations to Plaintiff.

25.    As was foreseeable to and/or should have been foreseen by WELLS FARGO, MMC, MCCORMICK and any investor of the loan, Plaintiffs began having

financial difficulty in meeting their loan obligation immediately following September of 2009, due to MARK KOEHLER'S business suffering from the current economic climate.

26.   After depleting their financial resources, Plaintiffs defaulted under the terms of their loan.  In consummation of the eventuality, John Burson, Esq. and his agents, as the purported holder and Trustee of the first note is scheduled to foreclose on the property in the coming months.

27.   Defendants WELLS FARGO, MMS and MCCORMICK (by and through its trustee, John Burson, Esq.), have since at least January of 2006, issued, originated, funded and/or brokered mortgage loans to various borrowers throughout Maryland; and, have engaged in numerous real estate transactions including the transaction *sub judice* in Carroll County, in the State of Maryland.

28.   In January of 2010, Plaintiff sent a Qualified Written Request ("**QWR**") to WELLS FARGO. Plaintiff, on advice of Counsel, requested WELLS FARGO's mortgage pooling and servicing agreement, and all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements for the Plaintiff's mortgage. WELLS FARGO allegedly responded with a statement that they were "*merely the servicer in [the] transaction...As the investor, Wells Fargo offers to fund or purchase various types of mortgage loans originated by mortgage brokers and bankers across the country....The mortgage broker performs all the origination services, including handling all discussions with the borrower, taking the application, processing the application, preparing [the] underwriting package and arranging the closing...*" ***Exhibit B***.

29.   After initial review of the HUD-1, WELLS FARGO charged Plaintiffs a

$500.00 "Underwriting Fee", a fee charged by the lender to determine the risk analysis of a Borrower's loan package. It also is charged by the lender to verify information on a loan application, authenticate the property's worth as collateral, and make a final determination about whether to grant a loan to the applicant.

30.   In this case, WELLS FARGO were negligent in verifying all information found in the loan, and even did not verify that the URLA was signed by Plaintiffs.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF THE TRUTH IN LENDING ACT ("TILA")

### (15 U.S.C. §§ 1601 *et sec.*)

#### *[AS TO ALL DEFENDANS]*

31.   Plaintiffs incorporate by reference each preceding paragraph as if it were fully set forth herein.

32.   In accordance with 15 U.S.C. § 1601, *et seq.* ("TILA") and 12 CFR § 226 ("Reg. Z"),[1] the closed-end real estate transaction at issue was made with a "creditor;" incurred a "finance charge;" were payable in more than four (4) installments; and were secured by Plaintiff's principal dwelling. As such, the real estate transactions at issue are subject to the provisions of TILA and Reg. Z.

33.   Transactions that fall under the purview of TILA and Reg. Z must make certain pre-disclosures which truthfully disclose and explain the following:

---

[1] Reg. Z. was issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth in Lending Act (TILA). The purpose of this regulation is to promote the informed use of consumer credit by requiring

a. the name of all creditors in the transaction;

b. the amount financed and itemization of the amount financed;

c. the finance charge;

d. the annual percentage rate;

e. the maximum interest rate in variable rate transactions;

f. the truth in lending disclosure statement ("TILDS");

g. the consumer's handbook and loan program disclosures;

h. the payment schedule;

i. the total number of payments and total sales' price;

j. the right of rescission;

k. prepayment options and penalties;

l. late payment consequences;

m. security interest acquired and by whom;

n. insurance and debt cancellation coverage;

o. certain security interest charges; and

p. required deposits.

q. Proper pre-disclosures were not provided to Plaintiff within the lawful timeframe, or were not provided at all, in violation of TILA and Reg. Z.

34.    Defendant's violated Reg. Z §§ 226.18 and 226.19 by not <u>accurately</u> disclosing and, further, by failing to disclose altogether the following in the TILDS:

a. the amount financed;

---

disclosures about terms and cost associated with the transaction. The regulation also gives consumers the right to cancel certain credit transactions that involve a consumer's principal dwelling.

    b.  the itemization of amount financed;

    c.  the finance charge;

    d.  the annual percentage rate; and

    e.  the correct dollar amounts of the largest and smallest payments in the series that reflect variable rates as indicated in the ARN for the Loan to Plaintiffs.

35.   Defendant's either refused or failed to provide a TILDS for this transaction.

36.   Defendant's willfully and knowingly gave false information to Plaintiffs, unsophisticated consumers, to induce Plaintiffs to enter into a real estate credit transaction in violation of TILA and Reg. Z, resulting in financial hardship and severe monetary damages to Plaintiffs. But for Defendant's over-reaching attempts to conceal the true nature of the contractual terms, Plaintiffs would not have entered into the loan transaction.

37.   By reason of Defendant's' violations of TILA and Reg. Z, Plaintiffs were forced into consummating a credit transaction where the details of the transaction were not lawfully or truthfully disclosed to Plaintiffs, nor were Plaintiffs given a reasonable opportunity to inquire of same. Likewise, Defendant's and all of them failed or refused to provide required pre-disclosures or sufficient information on Plaintiffs right to rescind the transaction.

38.   Therefore, Plaintiffs are entitled to statutory damages, cancellation of Plaintiffs debt obligation to Defendants, reasonable attorneys' fees in a sum to be determined at trial and such other and further legal and equitable relief as may be deemed just and proper.

39.   Plaintiffs allege that the Defendant's and certain DOEs, have engaged in a pattern or practice of extending credit to consumers other high rate mortgages, as defined by 15 U.S.C. §1602(a), based on the consumer's collateral without regard to the consumer's repayment ability, including their current and expected income, current obligations and employment, in violation of 15 U.S.C. §1639(h).

40.   Also, in violation of the Truth in Lending Act ("TILA" hereinafter), the Defendant's failed to provide, prior to the close of escrow, a Good Faith Estimate as required by TILA.  (15 U.S.C. §1638(b)(2); Reg. Z §226.19(a)(1)).

41.   Plaintiff alleges that the Defendant's and certain DOEs conspired to acquire the appreciation and equity in Plaintiff's residence by financing the residence beyond Plaintiff's ability to pay.

42.   Because the transaction described herein met the HOEPA definition of high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three (3) days in advance of consummation of the transaction.  (15 U.S.C. §1639(b)).

43.   The Defendant's and certain DOES, via their agents and certain DOES, did not furnish the required HOEPA disclosures to Plaintiffs three (3) days prior to the consummation of the transaction or at any time.

44.   Moreover, the disclosures that the Lender Defendant's and certain DOES, via their agents Defendant's Del and certain DOES, did not provide and were deficient as follows:

a.  The finance charge was miscalculated;

b.  The Annual Percentage Rate was miscalculated;

c. No notice was provided that either of the joint owners could cancel or rescind the loan within three days; and

d. Two copies were not provided per borrower.

45. Additionally, the miscalculated finance charge and Annual Percentage Rate constitute a separate TILA violation for failure to make material disclosures. (15 U.S.C. §1638; Reg. Z §§ 226.17-226.24)

46. The Defendant's also violated TILA's general notice provisions when they failed to give any notice of the right to rescind the contract after signing the documents.

47. Plaintiffs allege that the Defendants, and all of them, have engaged in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602 (aa) of TILA based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment. The loan made herein to Plaintiff is but one example.

48. As a result of the above-referenced violations of HOEPA and TILA, Plaintiff retained the right to rescind the transaction up to three (3) years after its consummation.

49. As a direct and proximate result of Defendant's violations of HOEPA and TILA Plaintiff have suffered actual and statutory damages in an amount to be proven at time of trial.

50. Defendant's conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiff. Plaintiff therefore requests an award of punitive damages pursuant to Maryland

Civil Code §3394 as against all Defendant's.

51.   As a result of the foregoing, Plaintiff is also entitled to costs of suit and attorney's fees, plus other incidental and consequential damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

## (12 USC § 2601, et. Seq.)

### *[AS TO ALL DEFENDANS]*

52.   Plaintiffs reaffirm, reallege, and incorporate by reference the allegations as if specifically set forth herein.

53.   As "lenders," "creditors," or "mortgage brokers" of a federally related mortgage loan, Defendant's are subject to the provisions of RESPA, 12 USC § 2601, *et seq.*, 24 C.F.R. §3500 of Reg. X.

54.   Upon information and belief, Defendant's failed to comply with the pre-disclosure requirements under RESPA and Reg. X. On or before the date of settlement, Plaintiff was not provided and did not receive proper pre-disclosure statements as required under RESPA and Reg. X; among other such required disclosures, specifically, to wit: a good faith estimate of settlement expenses ("GFE").

55.   Defendants violated 12 U.S.C. § 3500.7 and 24 C.F.R § 3500.7 because the required pre-disclosure statements were not provided to Plaintiffs. Defendants did not deny Plaintiffs loan application ("URLA"), therefore, Defendant

should have provided the RESPA required pre-disclosures within three business days after the URLA was received or prepared. Plaintiffs were entitled to inspect the projected costs associated with settlement, but were wrongfully denied this opportunity by Defendants, and all of them.

56.   Because Plaintiffs were not provided with the necessary RESPA pre-disclosures, any and all charges assessed against Plaintiff and/or monies paid by or for the Plaintiff related to the loan transaction, prior to, during and post-closing, inclusive, and, accordingly, constitute fees, kickbacks, or other things of value in connection with "settlement services" that were not actually performed in accordance with 24 C.F.R. §3500.14(b).

57.   Moreover, Plaintiffs were not provided at settlement, and has never been provided the RESPA required pre-disclosures.  Thus, Plaintiffs specifically deny the authenticity and validity of the negotiable instruments and security instruments herein at issue.

58.   As a result of the Defendant's' violations of RESPA and Reg. X, Plaintiffs were forced into consummating a real estate transaction, the details of which were not lawfully or truthfully disclosed to Plaintiffs, nor were Plaintiffs given a reasonable opportunity to inquire of same.

59.   As a result of Defendant's actions and/or inactions, as stated, and all loan activities that have occurred resulting there from, Plaintiffs have been caused to suffer severe mental anguish and emotional distress.

60.   Accordingly, Defendant's are liable to Plaintiffs in an amount equal to three times the amount of charges paid by Plaintiffs for "settlement services" pursuant to 12 USC § 2607(d)(2), any and all actual damages suffered by

Plaintiffs as a result of Defendants actions and/or inactions pursuant to 12 USC 2605 (f)(1)(a), and such other and further legal and equitable relief as may be deemed just and proper.

### THIRD CAUSE OF ACTION

### CONSTRUCTIVE FRAUD

*[AS TO ALL DEFENDANS]*

61.    Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

62.    Plaintiff, by virtue of MCCORMICK and MMS's position as a mortgage broker and WELLS FARGO as lender, both, jointly and severally, owed a fiduciary duty to Plaintiffs and Plaintiffs reposed trust and confidence in Defendants MCCORMICK, MMS and WELLS FARGO.

63.    Among the fiduciary duties owed by Defendants MMS, MCCORMICK and WELLS FARGO to Plaintiffs, was the duty to act in good faith and in accordance with laws governing the relationship between Plaintiffs and MMS, MCCORMICK and WELLS FARGO.

64.    WELLS FARGO, MMS and MCCORMICK owed a fiduciary duty to truthfully disclose certain details to Plaintiffs in connection with the purchase of the subject property, and to assure that they were not harmed financially or otherwise, according to laws governing the relationship between Plaintiffs, WELLS FARGO, MMS and MCCORMICK.

65.    WELLS FARGO, MMS and MCCORMICK breached the fiduciary duty owed to Plaintiffs intentionally, with malice, and/or with reckless disregard for

Plaintiffs' rights by unlawfully failing to disclose or concealing material information in connection with the purchase of the Property. In breach of the fiduciary duty owed to Plaintiffs, WELLS FARGO, MMS and MCCORMICK acted willfully and contrary to the best interests of Plaintiffs.

66.   As a result of WELLS FARGO, MMS and MCCORMICK's breach of fiduciary duty, Plaintiffs suffered damages.

67.   MMS and MCCORMICK and its loan officer, as agents of Defendant WELLS FARGO, were at all times relevant hereto acting within the scope of their agency in that their actions were committed while during the course of ordinary business and in furtherance of WELLS FARGO's interests. Defendant WELLS FARGO is, therefore, responsible for all the acts, representations and omissions made within the scope of such agency.

68.   Defendant's made representations to Plaintiffs in the proposed loan documents presented for signature on February 12, 2007 by MMS, MCCORMICK, and WELLS FARGO and representations made through their agents that Plaintiffs had a monthly income of $16,250.00. The statements by MMS and MCCORMICK and their representative(s) that Plaintiffs would qualify for an affordable mortgage loan with a stated monthly income of $195,000.00 annually. These representations constitutes an assertion of a false misrepresentation of material fact to Plaintiffs, one which the Plaintiffs did not learn of until almost one year after they appeared for closing, in violation of both federal and Maryland laws and regulations.

69.   Plaintiffs allege that at all times herein mentioned, representations made to Plaintiffs pertaining to their loan was false and fraudulent.

70.   The representations made by Defendants were, in fact, false. When Defendants made these representations, they knew them to be false.  These representations were made by Defendants with intent to defraud and deceive Plaintiffs and with intent to induce Plaintiffs to act in the manner herein alleged. Defendants, and all of them, were desirous of inducing Plaintiffs to proceed with the transaction to secure the collection of settlement charges, points and yield spread premiums, and other fees from the Plaintiffs.

71.   Further, at the time Defendants made the promises to Plaintiffs, Defendants had no intention of truthfully or lawfully performing them, but induced the Plaintiffs to act on the false and fraudulent representations. Upon information and belief, Defendants, and all of them, encouraged Plaintiffs to proceed with the transaction for the purpose of creating a debt obligation which WELLS FARGO would eventually bundle with other debt obligations to transfer by "true sale"[2] to another entity in a process referred to, *supra,* as securitization.

72.   Thus the Defendants, and all of their, representations were made for the purpose of defrauding Plaintiffs. The representations made by Defendants to Plaintiffs were made with the intention of having Plaintiffs act and rely upon them, and, in fact, the Plaintiffs did rely upon the said representations to their financial detriment.

73.   Plaintiffs' actions of submitting a Uniform Residential Loan Application ("URLA"), borrowing funds, agreeing in refinance the mortgage loan on their property, and entering into a long term contract were accomplished in

---

[2] A "true sale" herein references the transfer of assets from one entity to another that places the assets beyond the reach of the first entity's creditors, even if the first entity becomes the subject of a bankruptcy or similar proceeding.

reliance upon Defendants statements, and Plaintiffs were justified in their reliance because of many conversations with Defendants, and the fiduciary relationship between the Plaintiffs and Defendants.

74.   As a proximate result of Defendants fraud and deceit and the facts herein alleged, Plaintiffs were fraudulently induced to enter into a transaction that had a high likelihood of default and foreclosure, and that has since destroyed Plaintiffs credit rating, and damaged any chance she may have to buy an affordable home in the future. Therefore, by reason of Defendants fraud, Plaintiffs have suffered, incurred and sustained damages.

75.   WHEREFORE, Plaintiffs demand judgment against Defendants MMS, MCCORMICK, and WELLS FARGO for compensatory damages in the amount of the Loan, the interest and fees paid to date on the same, plus punitive damages in the total amount of $1,000,000.00, and interest, costs, and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### CIVIL FRAUD

#### [AS TO ALL DEFENDANS]

76.   Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

77.   MMS and its loan officers, as agents of WELLS FARGO, were at all times relevant hereto acting within the scope of their agency in that their actions were committed while during the course of ordinary business and in furtherance of WELLS FARGO'S   interests. Defendant WELLS FARGO is, therefore,

responsible for all the acts, representations and omissions made within the scope of such agency.

78.    WELLS FARGO, MMS, AND MCCORMICK failed to disclose material information regarding the terms of the loan that were being arranged, with the intent to deceive Plaintiffs and to conceal the terms and the economic impact of Plaintiffs' mortgage loan. Defendants, and all of them knew, or with a reasonable degree of due diligence, should have known, that Plaintiffs would not have agreed to purchase the Property had Plaintiffs known of the existence and the economic impact of the mortgage loans.

79.    Plaintiffs relied on the statements of Defendants and its loan officers at the time of closing, and the belief that they appropriately qualified for and could afford the mortgage loans from WELLS FARGO, and Plaintiffs were justified in their reliance.

80.    As a result of DEFENDANT's deceit and concealment, Plaintiffs have suffered damages.

81.    WHEREFORE, Plaintiffs demand judgment against Defendants WELLS FARGO, MMS and MCCORMICK for compensatory damages in the amount of the Loan, the interest and fees paid to date on the same, plus punitive damages in the total amount of $1,000,000.00, and interest, costs, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

#### *[AS TO ALL DEFENDANS]*

85.     Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

86.     By virtue of WELLS FARGO and Defendants MMS and MCCORMICK's position as a mortgage broker and lender, respectively, both, jointly and severally, owed a duty to Plaintiffs.

87.     MMS, MCCORMICK, and WELLS FARGO, owed a duty of care to Plaintiffs to provide financial services and a financial product that was specifically tailored to Plaintiffs' circumstances. The duty required full disclosure and transmittal of accurate information from Defendants, and all of them. .

88.     Defendants breached this duty of care to Plaintiffs by failing to disclose material information in connection with the financial services to Plaintiffs and by providing Plaintiffs with a deceptive financial product based on an inflated monthly and annual income, unbeknownst to Plaintiffs.

89.     Defendants collective negligence proximately caused Plaintiffs to suffer severe economic injury, financial ruin, great mental anguish, loss of work, loss of wages, and other compensatory damages. All such damages were caused solely by the negligence of Defendants without any negligence by Plaintiffs.

90.     WHEREFORE, Plaintiffs demand judgment against Defendants and all of them, for compensatory damages in an amount equal to the amount of the Loan made to the Plaintiffs, the costs and fees attendant thereto, in the total sum

of $1,000,000.00, and for interest, costs, and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

*[AS TO ALL DEFENDANS]*

91.   Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

92.   In doing the acts herein alleged, Defendant's acted with oppression, fraud, and malice, and Plaintiff is, therefore, entitled to compensatory and punitive damages in a sum to be determined at trial and such other and further legal and equitable relief as may be deemed just and proper.

93.   Defendants made these representations for the purpose of enticing Plaintiff to make the loan described herein.  Plaintiff reasonably relied upon these representations.

94.   Defendant's made the following false representations either negligently or intentionally to Plaintiff:

     a. Defendant's misrepresented Plaintiffs monthly and annual income, qualifying them for a Loan that they would not be able to afford.

     b. Defendant's failed to disclose to Plaintiff that the loan she was making to Plaintiff was illegal under applicable state and federal law.

95.   At the time of the loan origination, Defendants failed to provide Plaintiffs with the initial and final mandated disclosures, and repeatedly employed coercive tactics in order to persuade Plaintiffs to sign loan documents. Thus, Defendants failure to disclose, and the making of materially false representations

concerning the terms and conditions of the loan, continued to be false thereafter and were made for the purpose of deceiving Plaintiffs and inducing their reasonable reliance on such representations; and, based upon such reliance, to execute the loan documents at the closing.

96.    Defendants had no reason to believe Plaintiffs would ever have the ability to perform according to the actual terms and conditions of the mortgage loan, based on the Plaintiffs debt to income ratio, and an accurate representation of what Plaintiffs made on an annual basis.

97.    By intentionally misrepresenting the amount of money Plaintiffs made each month, and by representing to Plaintiff that this was legal, Defendants violated their implied "covenant of good faith and fair dealing" in the underwriting of the loan without regard to the borrower's ability to repay the loan, instead relying on the foreclosure value of the collateral to recover principal, interest, and fees.

98.    Defendant's perpetuated the fraud by misrepresenting the monthly income of Plaintiffs and hid from Plaintiffs what they were actually being charged for the loan.   As a result, Defendant's collected illegal processing and underwriting fees in an amount to be proven at trial.

99.    Plaintiffs were never provided disclosures by Defendants regarding the loan transaction.   Defendants either negligently, or intentionally, misrepresented the material terms of the loan by understating the finance charge and the annual percentage rate of the loan, by never giving clients their initial disclosures.

100.  Plaintiffs were induced to and did execute the loan closing based on

Defendants misrepresentations.

101. Based upon the representations of Defendants, Plaintiffs reposed their trust in the representations of Defendants. Such trust was reasonable. Plaintiffs relied on Defendants professional statements that they would be able to pay the loan back in full.

102. Plaintiffs allege that Defendants knew at the time they made these misrepresentations of material facts to Plaintiff that were untrue.

103. Plaintiff alleges that the loan was unconscionable in that the repayment terms were unfair and unduly oppressive, because the payments exceeded Plaintiffs entire combined income and as such, Defendants, and each of them, cannot enforce the terms and conditions of the loan against Plaintiffs, and any non-judicial foreclosure arising there from is void or voidable.

104. Defendants allege that Plaintiffs defaulted on their residential home loan, and that this default was not directly related to the structure of the loan and interest rate. However, Defendants prior fraud during the original loan transaction has excused Plaintiff from any performance.

105. Plaintiffs allege that by virtue of their reasonable reliance and the increased interest they were made to pay, that they have been damaged in the loss of good credit and a higher payment and are now being involved in litigation, all to their damage and injury.

106. Plaintiffs have been made to suffer deep and severe emotional distress, mortification, anxiety, and humiliation all to their damage and injury in an amount which has not yet been fully ascertained, but in no event less than the jurisdictional limitations of this court.

107. Defendants conduct as set forth above was intentional, oppressive, fraudulent, malicious, and/or in reckless disregard of plaintiff's statutory rights, so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

108. As a direct and proximate result of the misrepresentations of Defendants, Plaintiffs have been injured in an amount to be proven at trial and therefore Plaintiffs are entitled to recover such damages from Defendants, and each of them, individually and severally.

109. As a result of the foregoing, Plaintiffs are also entitled to costs of suit and attorney's fees, plus other incidental and consequential damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### CIVIL CONSPIRACY

*[AS TO ALL DEFENDANS]*

110. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

111. Without Plaintiffs' consent or approval, at some time prior to, contemporaneous with, or subsequent to the closing on February 12, 2007, Defendant WELLS FARGO entered into an agreement with unknown co-conspirators (DOEs 1 – 50), whereby Defendant WELLS FARGO agreed to act together in a combined and concerted effort to achieve a pre-conceived plan to induce Plaintiffs to enter into a securities transaction.

112. Upon information and belief, Defendant WELLS FARGO and the

unknown co-conspirators had an understanding that the underlying debt obligation created by the residential mortgage loans to Plaintiffs would be immediately packaged and sold on a secondary mortgage market as mortgage-backed securities in a process referred to, *supra,* as securitization.

113.  In an effort to conceal the true identity of the of the transaction, Defendant WELLS FARGO and the unknown co-conspirators agreed, between and among themselves, to engage in actions and a course of conduct designed to accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud Plaintiffs.

114.  Defendant WELLS FARGO and the unknown co-conspirators agreed, between and among themselves, to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense and detriment of the Plaintiffs.

115.  Defendant WELLS FARGO and the unknown co-conspirators actions were committed intentionally or with reckless disregard for Plaintiffs rights and ability to repay the residential mortgage loans.

116.  As a result of Defendants WELLS FARGO and the unknown co-conspirators conspiracy described herein above, Plaintiffs have suffered severe economic injury and other compensatory damages.

117.  WHEREFORE, Plaintiffs demand judgment against Defendant WELLS FARGO and the unknown co-conspirators (DOEs 1 – 50) in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## AIDING AND ABETTING

### *[AS TO ALL DEFENDANS]*

118.  Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

119.  By virtue of WELLS FARGO and Defendants MMS and MCCORMICK as a lender and mortgage broker, respectively, both, jointly and severally, owed a duty to Plaintiffs.

120.  WELLS FARGO, MMS, and MCCORMICK, breached their duties of care to Plaintiffs by failing to disclose material information in connection with the financial services to Plaintiffs, and by providing Plaintiffs with a deceptive financial product by basing their qualification on an inflated monthly income, unbeknownst to Plaintiffs.

121.  Defendants, and all of them, possessed actual knowledge of the aforesaid tortious wrongful conduct.

122.  Defendant WELLS FARGO aided, abetted and encouraged MMS and MCCORMICK's wrongful and tortious conduct and knowingly provided substantial assistance, aid and encouragement in the commission of such conduct by unlawfully accepting and selling Plaintiffs' mortgage loans for economic gain.

123.  Defendant WELLS FARGO aided and abetted MMS and MCCORMICK's wrongful and tortious conduct and knowingly provided substantial assistance, aid and encouragement in the commission of such

conduct by initiating and participating in foreclosure proceedings against Plaintiffs.

124. As a result of Defendants tortious aiding and abetting of the aforesaid tortious conduct, Plaintiffs have suffered severe economic injury, financial ruin, great mental anguish, loss of work, loss of wages, and other compensatory damages.

125. WHEREFORE, Plaintiffs demand judgment against Defendants WELLS FARGO, MMS, and MCCORMICK in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## DECLARATORY JUDGMENT AND QUIET TITLE

### *[AS TO ALL DEFENDANTS]*

126. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

127. Plaintiff was and at all relevant times the title owner of the Subject Residence as her sole and separate property pursuant to a quitclaim deed dated February 16, 2007. The legal description of that property is attached hereto as part of **Exhibit G**. The assessor's parcel ID number is 04-0-058151. A deed of trust for the benefit of the Defendant's was recorded on February 16, 2007 against the property.

128. The above described Deed of Trust is the security for the promissory note that was signed by the Plaintiff on February 12, 2007. True and correct copies of the deed of trust and promissory note are attached hereto as **Exhibit G**.

129. In addition to the foregoing, this is an action for declaratory judgment

pursuant to § 3-406 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, for the purpose of determining a question of actual controversy between the parties, as herein described below.

130. At all times herein mentioned, Defendants MMS and MCCORMICK were acting as the agents, employees, or servants of Defendant WELLS FARGO and was at all times acting within the purpose and scope of such agency and employment.

131. Plaintiffs, at all times relevant hereto, are and have been the record owners and are entitled to possession of the Property.

132. Plaintiffs allege that they claim an interest in the property adverse to the Defendants herein. However, the claim of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

133. In light of the unlawful conduct committed by Defendants and the unlawful status of the loan transaction described herein, Plaintiffs seeks an order of the Court declaring the Deed of Trust and subsequently filed notices of default and foreclosure sale void and a declaration that Defendant's currently hold no interest in the subject residence.

134. WHEREFORE, Plaintiffs demand an order from this Court declaring that title to the Property is solely vested in Plaintiffs alone and that Defendants herein be declared to have no estate, right, title or interest in the Property and that said Defendants be enjoined from asserting any estate, right, title or interest at law or otherwise relating to use, occupancy, or possession of the Property or any portion thereof, and awarding Plaintiffs costs and such other and further

relief as this Court deems appropriate.

### TENTH CAUSE OF ACTION

#### INJUNCTIVE RELIEF

*[AS TO ALL DEFENDANTS]*

135.   Plaintiffs incorporate by reference each preceding paragraph as if it were fully set forth below.

136.   Defendants are responsible for redressing Plaintiffs claims as set forth herein, or claim to have an interest in the Plaintiffs residential real property.

137.   Defendants as purported agents for one or more of the Defendants claiming an interest in the note have, without privilege, recorded a notice of default and a notice of trustee's sale that are based on a void deed of trust.

138.   None of the named Defendants, jointly or severally, nor anyone acting on their behalf, has a right to foreclose on the property, because the transaction under which such parties claim any right or interest in the property was entered into by Plaintiffs based wholly in reliance on the misrepresentations of the Defendants, and the documents evidencing the loan are and were therefore voidable and ought to be voided.

139.   Plaintiffs are threatened with immediate, irreparable harm if any Defendant is permitted to continue to lay claim to Plaintiffs property and commence any action to deprive Plaintiffs of title or possession of the property.  If Defendants are not stopped from commencing any action to further their unlawful claims to an interest in the property, Plaintiffs could and would thereby lose their home, a loss the Plaintiffs should not be permitted to suffer.

140.  Even if any of the named Defendants can, at some point, prove the note and deed of trust should not be voided, any injuries they might suffer by the court granting a temporary restraining order and preliminary injunction against them would be substantially less harmful than those which Plaintiffs would suffer by the loss of their home. Accordingly, Plaintiffs are entitled to a temporary restraining order and preliminary injunction and permanent injunction against all Defendants in this case, prohibiting them from taking any further action to transfer the property.

141.  By the actions above and set forth herein, Plaintiffs have a strong likelihood of prevailing on the merits of the case. Plaintiffs request that this court grant a preliminary injunction and temporary restraining order and injunctive relief, as to a permanent injunction precluding Defendants from engaging in the wrongful conduct identified herein in the future.

142.  Because the note and deed of trust are void, Defendants do not have standing or any enforceable right to enforce the note and any incidental right to collateral so as to foreclose on Plaintiffs home, including without limitation, conducting a trustee's sale relative to that property.

143.  Defendants have threatened to, and unless restrained, will sell Plaintiffs home after the foreclosure.

144.  Any such action would result in a new cause of action for conversion or wrongful sale and cause irreparable harm to Plaintiffs, and will cause financial damages which will not afford adequate relief because Plaintiffs ownership interest in the home is unique.

145.  Injunctive relief is necessary to enjoin Defendants from further

transferring any interest in Plaintiffs home since they lack standing and any enforceable rights under the promissory note.

WHEREFORE, Plaintiffs, having set forth numerous legally sufficient causes of actions against the Defendants, jointly and severally, prays for the entry of judgment against all Defendants in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court:

  A. Assume jurisdiction of this case;

  B. Award statutory damages;

  C. Award Plaintiffs interest, costs, and reasonable attorneys' fees in accordance with 15 U.S.C.§ 1640;

  D. Award compensatory damages and special damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(1);

  E. Award statutory damages in the amount of twice the finance charge not to exceed $1000 in accordance with 15 U.S.C. § 1640(a)(2);

  F. Award declaratory relief sought;

  G. Award such other relief as the Court deems appropriate.

## V. PRAYER FOR PUNITIVE DAMAGES

WHEREFORE, Plaintiffs respectfully prays that this Court award Plaintiffs for punitive damages in the sum of $ 5,000,000.00.

## VI. DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all matters so triable as a matter of right.

## VII. VERIFICATION

I know of the contents of the foregoing complaint of my own personal knowledge and also believe them to be true and correct. I have had the contents of this document read to me and I declare under penalty of perjury that all of the factual statements are true and correct.

Executed on this ___ of May 2010.

Date: May 28, 2010

Respectfully Submitted by:

_____
MARK KOEHLER

_____
ANNE KOEHLER

_____
Respectfully Submitted,

**Terry Morris, Esq.**
Morris Palerm LLC
17 W. Jefferson St
Suite 005
Rockville, MD, 20850
Office: 301-424-6290
Fax: 301-424-6294
*Attorney for Plaintiffs*